UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| **VANTRAE D. BOOKMAN,** | ) |
| Plaintiff, | ) Case No. EDCV 06-01382 AJW |
| v. | ) |
| | ) **MEMORANDUM OF DECISION** |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| Defendant. | ) |

Plaintiff filed this action for judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying plaintiff's application for supplemental security income ("SSI") disability benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural history of this case, which is summarized in the Joint Stipulation. [See JS 2]. In a written hearing decision that constitutes the Commissioner's final decision, an administrative law judge ("ALJ") found that plaintiff had deficit hyperactivity disorder, generalized anxiety disorder, and borderline intellectual functioning, which in combination were "severe." The ALJ concluded, however, that plaintiff was not disabled under the childhood disability standard because his impairments were not medically or functionally equivalent to any impairment or combination of

impairments in the Listing of Impairments (the "listing"), 20 C.F.R. Part 404, Subpart P, Appendix 1.[See JS 2 & Administrative Record 17 ("AR")]. Further, the ALJ concluded that plaintiff was not disabled under the disability standard applicable to adults once he attained the age of 18 because at that point he had the residual functional capacity ("RFC") to perform jobs available in significant numbers in the national economy. [AR 23-24].[1]

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

**Standard governing childhood disability**

A child under the age of 18 is disabled within the meaning of the Social Security Act "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be

---

[1] At the time his SSI benefits application was filed, plaintiff was fifteen years old, making him an adolescent for the purposes of disability determination. 20 C.F.R. § 416.926a(g)(2)(v). [See AR 14, 23]. As of June 30, 2006, plaintiff attained the age of 18 [AR 23], making him a younger adult for purposes of the disability determination. 20 C.F.R. § 416.963(c).

1 expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(I) (as
2 amended); 20 C.F.R. § 416.906; see Merrill ex rel. Merrill v. Apfel, 224 F.3d 1083, 1085 (9th Cir. 2000)
3 (citing section 1382c(a)(3)(C)(I)). The regulations governing the evaluation of childhood disability
4 provide that "if the child's impairment or impairments do not meet, medically equal, or functionally equal
5 in severity a listed impairment, the child is not disabled." Brown v. Callahan, 120 F.3d 1133, 1135 (10th
6 Cir. 1997) (citing 20 C.F.R. § 416.928 (a)); see 20 C.F.R. §§ 416.902, 416.906, 416.924-416.926a
7 (regulations concerning childhood disability standards).

8       To meet a listed impairment, a claimant must show that his or her impairment "meet[s] all of the
9 specified medical criteria. An impairment that manifests only some of those criteria, no matter how
10 severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990); see Tackett v. Apfel, 180 F.3d
11 1094, 1099 (9th Cir. 1999). To medically "equal" a listed impairment, a claimant must present medical
12 findings at least equal in severity and duration to all of the criteria for the most similar listed impairment.
13 See Sullivan, 493 U.S. at 531; Tackett, 180 F.3d at 1099-1100; 20 C.F.R. § 416.926 (discussing medical
14 equivalence for adults and children).

15       If a child disability claimant does not have an impairment or combination of impairments that
16 meets or equals any listing, the ALJ must consider "whether it results in limitations that functionally equal
17 the listings." 20 C.F.R. § 416.926a(a). "Functional equivalence" is determined not by reference to the
18 criteria for any particular listed impairment, but by reviewing "all relevant information" in the case record,
19 including information from a broad range of medical sources and non-medical sources, to assess the
20 child's functioning in six areas, which are referred to as "domains." See 20 C.F.R. § 416.926a. The
21 domains are (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and
22 relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and
23 physical well-being. 20 C.F.R. § 416.926a(b)(1)(I)-(vi).

24 **Standard governing adult disability**

25       In determining whether an adult claimant is disabled within the meaning of the Social Security
26 Act, a five-part sequential evaluation is used:
27       Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is
28         found not disabled. If not, proceed to step two.

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 (9th Cir. 1995). Therefore, while the test for childhood disability goes no further if the child's impairment does not meet or equal a listed impairment, an adult claimant whose impairment does not meet or equal a listed impairment may still be found disabled if the claimant lacks the RFC to engage in past relevant work or other work available in significant numbers in the economy, given his or her age, education, and work experience. See Sullivan, 493 U.S. at 521.

**Global Assessment of Functioning Scores**

Plaintiff first contends that the ALJ erred because he allegedly misrepresented the plaintiff's Global Assessment of Functioning ("GAF")[2] score of 50 by stating that plaintiff had a GAF score that

---

[2]The GAF score is a "multiaxial" assessment that reflects a clinician's judgment of a patient's overall level of functioning by asking the clinician to rate two components: the severity of a patient's psychological *symptoms,* or the patient's psychological, social, and occupational *functioning*. The GAF score is the lower of the symptom severity score or the functioning severity score. A GAF score of 41 through 50 denotes serious symptoms, such as suicidal ideation or severe obsessional rituals, or any serious impairment in social, occupational, or school functioning, such as the absence of friends or the inability to keep a job. A score of 51 through 60 signifies moderate symptoms, such as flat affect or occasional panic attacks, or moderate difficulty in social, occupational, or school functioning, such as having few friends or conflicts with peers or co-workers. A score in the range of 61 through 70 denotes some mild symptoms, such as depressed mood or mild insomnia, or some difficulty in social, occupational, or school functioning, such as occasional truancy or theft within the household, but indicate that the subject is generally functioning pretty well and has some meaningful interpersonal relationships. A score of 71 through 80 indicates that if symptoms are present, they are transient and expectable reactions to psychosocial stressors, representing no more than a slight impairment in social, occupational, or school functioning. See The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders Multiaxial Assessment (4th ed. 1994)(revised 2002); see also Morgan, 169 F.3d at 598 n.1("Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient."); Sousa v. Chater,

1  "ranged between 50 and 75 indicating generally moderate to mild limitations." [AR 18]. That contention
2  lacks merit.
3        As the ALJ noted, plaintiff underwent a treating source mental health evaluation on December 21,
4  2005. [AR 225]. The evaluation

> reflected the claimant was mildly anxious but not agitated. His speech was clear, audible,
> understandable and not pressured. Thoughts were relevant and coherent, verbalized in a
> free flowing manner and without evidence of a thought disorder. Global Assessment of
> Functioning ranged between 50 and 75 indicating generally moderate to mild limitations.

9  [AR 18 (internal citations omitted)]. More precisely, the December 2005 treatment report stated that
10  plaintiff had a current GAF score of 50 and a past year GAF score of 75. [AR 225]. Elsewhere in the
11  record, plaintiff was given a GAF score of 50/65 (current/past year) on September 24, 2001 and 65
12  (current) on October 2, 2002. [AR 170, 174, 225]. Viewed over time, plaintiff's GAF scores indicated
13  that he was functioning with slight (GAF score of 71 and above) or mild (GAF scores of 61-70) limitations
14  for most of the period between September 2000 and December 2005. Only in September 2001 and again
15  in December 2005 did plaintiff's GAF score dip below that range, to 50. Although a GAF score of 50
16  denotes a "serious" impairment in functioning, there is only a one-point difference between that score and
17  a score of 51, signifying "moderate" difficulty in functioning. Viewing plaintiff's GAF scores of 50 in
18  the context of his other GAF scores and the evidence as a whole, the ALJ did not misrepresent or
19  mischaracterize the record when he concluded that plaintiff's scores of "between 50 and 75 indicat[ed]
20  generally moderate to mild limitations." [AR 18].
21        Further, "[a] GAF score is a rough estimate of an individual's psychological, social, and
22  occupational functioning used to reflect the individual's need for treatment," and it is neither essential nor
23  conclusive when determining RFC. Vargas v. Lambert, 159 F.3d 1161, 1164 (9th Cir. 1998); Howard v.
24  Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th. Cir. 2002). Thus, an ALJ's failure to give weight to a

---

945 F.Supp. 1312, 1319 n.7, 1320 n.8, 1322 n.9 (E.D. Cal. 1996)(discussing the significance of GAF scores), rev'd on other grounds,143 F.3d 1240, 1245 (9th Cir. 1998); see also Vargas v. Lambert, 159 F.3d 1161, 1164 (9th Cir. 1998)(describing a GAF score as "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment").

1  claimant's GAF scores when assessing RFC is not reversible error, as long as substantial evidence exists
2  to support the ALJ's determination. See Stout, 454 F.3d at 1054.

3        The ALJ concluded that plaintiff's impairments did not meet or equal a listed impairment, and that
4  he "has the residual functional capacity to perform unskilled work requiring simple repetitive tasks, and
5  to respond appropriately with co-workers, supervisors, the public and usual work situations, and deal with
6  changes in a routine work setting." [AR 23]. As noted by the ALJ, plaintiff is young (currently 19 years
7  of age) and has no past relevant work. The ALJ noted that plaintiff could perform self care and assist with
8  household chores. He had no history of behavior problems. [AR 18]. Plaintiff has been described by one
9  of his teachers as someone who "gets along with others very well" and who is "liked by his peers." [AR
10 102]. The ALJ pointed to psychological test results leading to an impression of mild depressive and
11 attention deficit hyperactivity disorders and borderline intellectual functioning. [AR 18]. Although
12 plaintiff's previous middle school grades reflected some academic problems, his performance at Altus
13 Junior High School showed improvement. [AR 18, 233]. Despite problems with excessive talking,
14 hyperactivity, concentration, and attention, plaintiff was making satisfactory academic progress and was
15 achieving passing grades in four out of six classes. [AR 18, 245].

16       All of these facts were weighed by the ALJ in his decision. [AR 18-19, 21]. Substantial evidence
17 supports the ALJ's finding that plaintiff's impairments did not meet or equal a listed impairment and that
18 he retained the RFC to perform the unskilled work specified by the ALJ.

19       **Mental status evaluation by Ms. Truonl**

20       Plaintiff also contends that the ALJ committed legal error in failing to discuss or discount the
21 mental status evaluation by Beatrice K. Truonl, who completed an initial intake assessment of plaintiff
22 at the Tri-City Mental Health Center in September 2001. [JS 6-7; AR 162-170]. This contention also is
23 unpersuasive.

24       First, Ms. Truonl is a therapist with a master's degree, not a physician or other "acceptable medical
25 source" as that term is defined by 20 C.F.R. §§ 416.913(a) and 404.1513(a), so the ALJ may accord her
26 opinion less weight. 20 C.F.R. § 416.927(d)(2); see Gomez v. Chater, 74 F.3d 967, 971-972 (9th Cir.
27 1996), cert. denied, 519 U.S. 881 (1996). Secondly, as is noted by defendant, "in interpreting the evidence
28 and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" Howard ex rel.

1  Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir.
2  1998) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every
3  piece of evidence submitted.")).  In his decision, the ALJ discussed the mental evaluations from Tri-City
4  Medical Health Center, citing to the exhibit that contains Ms. Truonl's evaluation. [AR 18].  The ALJ
5  incorporated this information into his analysis, along with the other evaluations and records discussed in
6  his decision, which is supported by substantial evidence in the record. [AR 17-24].  The mere fact that the
7  ALJ did not single out and specifically discuss one piece of evidence provided by an examiner who is not
8  an acceptable medical source is not error as a matter of law.

**Conclusion**

10  For the reasons stated above, the Commissioner's decision is supported by substantial evidence
11  and reflects the application of proper legal standards.  Accordingly, the Commissioner's decision is
12  **affirmed**.

14  **IT IS SO ORDERED.**

16  DATED: March 12, 2008

/ s /
_____
ANDREW J. WISTRICH
United States Magistrate Judge

7